## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| & | |
| STATE OF MAINE, | |
| Plaintiffs, | |
| v. | No. |
| GARY S. WINN, D.O. | |
| Defendant. | |

## COMPLAINT

NOW COME Plaintiffs, the United States of America (the "United States"), on behalf of its agency the U.S. Department of Health and Human Services ("HHS"), and the State of Maine ("Maine"), on behalf of its agency the Maine Department of Health and Human Services ("Maine DHHS") (together, "Plaintiffs"), and hereby file this Complaint pursuant to 31 U.S.C. § 3730(a) and 22 M.R.S. § 15, and in support thereof allege as follows:

## I.    SUMMARY OF ACTION

1.    This is a civil action against Gary S. Winn, D.O. ("Winn" or "Defendant") for violations of the federal False Claims Act and analogous Maine state law. From January 2014 through November 2017 ("Claims Period"), Defendant knowingly submitted or caused to be submitted false claims for payment to the federal Medicare program ("Medicare") and the State of Maine's MaineCare program ("MaineCare") for services that were not performed or were not reasonably medically necessary.

2.      As a provider enrolled in the MaineCare and Medicare programs, Winn had agreed to abide by the rules, regulations, policies, and procedures governing reimbursement, and to keep and allow access to records and information as required by the MaineCare and Medicare programs. Among other things, Winn had agreed to submit claims only for services actually provided and only for reasonably necessary medical services that are covered under the programs, and only to seek compensation to which he was legally entitled.

3.      Despite acknowledging his obligation to submit claims only for services provided and for services that were reasonably medically necessary, Winn knowingly submitted claims for services that were not provided or were not reasonably medically necessary.

4.      The instant action accordingly seeks treble damages and civil penalties arising from false claims submitted by Winn to MaineCare and Medicare pursuant to the federal False Claims Act, 31 U.S.C. §§ 3729-3733, as well as Maine law, *see* 22 M.R.S. § 15.

## II.    JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims brought by the United States under the federal False Claims Act pursuant to 28 U.S.C. §§ 1331, 1345 and 31 U.S.C. § 3732(a).

6.      This Court further has jurisdiction over the claims brought by the State of Maine pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b).

7.      At all times relevant hereto, Winn was licensed to practice medicine in the state of Maine. At all times relevant hereto, Winn maintained his medical practice,

Provider's Care Family Practice Center ("Provider's Care"), in Biddeford and Sanford, Maine.

8.     This Court has personal jurisdiction over Winn pursuant to 31 U.S.C. § 3732(a) both because Winn resides in this District and because his acts proscribed under 31 U.S.C. § 3729 occurred in this District.

9.     Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1391(b), 1391(c), because Winn resides in this District and because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## III.   PARTIES

10.     Plaintiff the United States is acting on behalf of its federal agency, HHS.

11.     Plaintiff the State of Maine is acting on behalf of its state agency, Maine DHHS.

12.     Defendant Gary Winn is the former medical director/owner of Provider's Care, a family medical practice with offices in Biddeford and Sanford, Maine.

13.     During the timeframe relevant to this action, Winn was a medical care provider enrolled in the MaineCare and Medicare programs and regularly submitted claims for payment to those programs.

## IV.   APPLICABLE LAW & REGULATIONS

### A.     The MaineCare Program

14.     Under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w, the United States shares with the states the cost of medical services provided to certain groups, including low-income families with dependent children, and to aged and disabled individuals whose income and resources are insufficient to meet the cost of medical services.

15.     Medicaid is a federally assisted grant program for the states. Medicaid enables the states to provide medical care and related services to needy individuals by directly paying providers of that care and services. Within broad federal rules, each state decides who is eligible for Medicaid, the services covered, and payment levels for services, and each state is responsible for creating policies and procedures regarding the administration of its program. In Maine, the state's Medicaid program is called "MaineCare."

16.     MaineCare is a federal health care program paid by Maine state funds, as well as by grants made to states by HHS, by and through its sub-agency the Centers for Medicare & Medicaid Services ("CMS").

17.     The portion of MaineCare paid by federal funds is known as the Federal Financial Participation, and differs by state and by fiscal year based on each state's *per capita* income. This percentage contribution is known as the Federal Medical Assistance Percentage.

18.     Over the course of the timeframe relevant here, the average Federal Medical Assistance Percentage provided to the State of Maine was 62.96 percent, with the State of Maine funding the remaining 37.04 percent.

19.     Maine DHHS administers the MaineCare program for the State of Maine on behalf of CMS.

20.     MaineCare's regulations, policies, and guidelines require MaineCare-reimbursable services to be billed by providers using appropriate billing codes and methodologies.

21.     As a prerequisite to participating in MaineCare and receiving MaineCare funds for covered services, providers must also certify their compliance with applicable

MaineCare laws and regulations as a prerequisite to receiving MaineCare funds for covered services.

22.     Presently, and during the timeframe at issue, MaineCare rules governing covered services, and the submission of claims and reimbursement for those services, are contained in the MaineCare Benefits Manual.

23.     The MaineCare Benefits Manual also sets forth the requirements of provider participation.

24.     Providers enrolled in MaineCare agree to submit claims for only medically reasonable and necessary services that are covered under the program, for services actually provided, and to seek compensation to which the provider is legally entitled.

25.      Providers also must maintain medical records of sufficient quality to fully and accurately document the nature, scope, and details of the health care provided to each MaineCare member. Those records must include "all required signatures, treatment plans, progress notes, discharge summaries, date and nature of services, duration of services, [and] titles of persons providing the services," and providers are required to "make a notation in the record for each service billed."

26.      At all times relevant hereto, Defendant Winn was a participating MaineCare provider and submitted claims for reimbursement to MaineCare.

**B.     The Medicare Program**

27.     Medicare is a federal insurance program that provides health insurance to approximately fifty million Americans, most of them elderly or disabled. The Medicare Program is administered by CMS.

28.     Medicare Part B is funded by insurance premiums paid by enrolled Medicare beneficiaries and by contributions from the Treasury. Eligible individuals may

enroll in Part B to obtain benefits in return for payments of monthly premiums as established by HHS. *See* 42 U.S.C. §§ 13950, 1395r. Medicare payments are often made directly to service providers, such as medical care providers, rather than to the patient (also known as the "beneficiary"). This occurs when the provider accepts assignment of the right to payment from the beneficiary. In such instances the provider submits its bill directly to Medicare for payment, which is what Winn did in this case.

29.     All participating providers in Medicare must comply with applicable federal statutes, regulations, and guidelines in order to be paid by Medicare Part B. A provider has a duty to have knowledge of the statutes, regulations, and guidelines regarding coverage for Medicare services.

30.     Medicare makes clear in a variety of ways that participating providers may only bill for reasonable and necessary care. For example, the Medicare Benefit Policy Manual specifically excludes from coverage services that are not reasonable or necessary, stating "Items and services which are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member are not covered." Medicare's statutory guidance also makes clear that the program only pays for services that are "reasonable and necessary for the diagnosis or treatment of illness or injury . . . ." 42 U.S.C. § 1395y(a)(1)(A).

31.     Medicare also makes clear in various ways that participating providers may only bill for services that were actually provided, for example, requiring in the Medicare Benefit Policy Manual that a participating physician "must render the service for the service to be covered."

32.     Medicare also makes clear that claims by participating providers must be supported by medical records sufficient to identify the patient; support the

diagnosis/condition; justify the care, treatment, and services; and document the course and results of care.

33.     At all times relevant, Winn was a participating provider in Medicare.

34.     Thus, at all times relevant, Winn's claims for payment to the Medicare Program included explicit or implicit claims that the services for which he sought payment had been performed, were reasonable and necessary, and were supported by sufficient medical records.

35.     As part of his provider agreement with Medicare, Winn explicitly agreed that "[he] will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and [he] will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity."

**C.     The Federal False Claims Act**

36.     The False Claims Act, 31 U.S.C. § 3729(a)(1)(A), provides that a person is liable to the United States Government for three times the amount of damages that the Government sustains because of the act of that person, plus a civil penalty for each such claim, for each instance in which the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."

37.     The False Claims Act also provides that a person is liable to the United States Government for three times the amount of damages which the Government sustains because of the act of that person, plus a civil penalty for each such claim, for each instance in which the person "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(G). Records and statements are material to a false or fraudulent claim where

they have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

38.     The False Claims Act defines the term "knowingly" under 31 U.S.C. § 3729(b)(1)(A) to mean that a person, with respect to information, "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information."

39.     Pursuant to 31 U.S.C. § 3729(b)(1)(B), no proof of specific intent to defraud is required.

**D.    Maine Law Civil Liability of Persons Making False Claims**

40.     Maine law, 22 M.R.S. § 15, provides that:

[a]ny person, firm, association, partnership, corporation or other legal entity who makes or causes to be made or presents or causes to be presented for payment or approval any claim upon or against the department or upon any funds administered by the department, knowing such claim to be materially false, fictitious or fraudulent, or who knowingly makes any false written statement or knowingly submits any false document material to a false, fictitious or fraudulent claim or who knowingly enters into any agreement, combination or conspiracy to defraud the department by obtaining the payment or approval of any materially false, fictitious or fraudulent claim or who knowingly makes or causes to be made a false written statement or record material to an obligation to pay or transmit money or property to the department or knowingly conceals or knowingly and improperly materially avoids or materially decreases an obligation to pay or transmit money or property to the department is, in addition to any criminal liability that may be provided by law, subject to civil suit . . . [and] penalties. . . .

41.     This Court, pursuant to 31 U.S.C. § 3732(b), has jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under Section 3730 of Title 31.

## V.   FACTUAL BACKGROUND

42.   Winn is the former medical director/owner of Provider's Care, a family medical practice with offices in Biddeford and Sanford, Maine.

43.   In 2005, Winn enrolled as a participating provider in Medicare and remained a participating provider through 2020.

44.   In 2010, Winn entered into a Provider Agreement with Maine DHHS to become a MaineCare provider. The provider agreement was signed by Defendant, who listed his title as "provider/owner" of Provider's Care.

45.    As a provider participating in Medicare and MaineCare, Winn expressly or implicitly agreed to submit claims only for services actually performed and that were reasonably medically necessary.

46.   From January 2014 through November 2017, Winn submitted various claims to Medicare and MaineCare for services that were not performed or were not reasonably medically necessary.

47.   For example, in multiple instances, Winn submitted payment claims to Medicare and/or MaineCare for Osteopathic Manipulation Treatment ("OMT") services for multiple body regions when relevant medical records indicated that OMT was performed on fewer regions than Winn had claimed, thereby entitling Winn to a lower payment than claimed. Similarly, Winn submitted payment claims to Medicare and/or MaineCare for OMT services when relevant medical records did not indicate that any OMT service was performed.

48.   Additionally, Winn submitted payment claims to Medicare and/or MaineCare for smoking and tobacco use cessation counseling visits in addition to evaluation and management ("E&M") visits when relevant medical records did not

indicate that any smoking and tobacco use cessation counseling occurred beyond an admonishment to the patient to stop smoking, the sort of minimal counseling that may not be billed separately from a general E&M visit.

49.     Additionally, Winn submitted payment claims to Medicare and/or MaineCare for outpatient visits when relevant medical records did not indicate that an outpatient visit had occurred.

50.     Additionally, Winn submitted payment claims to Medicare and/or MaineCare for patient drug testing when relevant medical records did not indicate that such testing was medically necessary based on patient-specific criteria.

51.     Additionally, Winn submitted payment claims to Medicare and/or MaineCare for E&M services associated with OMT treatment when relevant medical documentation did not support a finding that the E&M services were medically necessary, significant, and separately identifiable services from the OMT treatment.

## VI.    LEGAL CLAIMS

### Count I: Presenting False or Fraudulent Claims

(United States; 31 U.S.C. §§ 3729(a)(1)(A), 3730(a))

52.     Paragraphs 1 through 51 are realleged as though fully set forth herein.

53.     Winn, by submitting claims to Medicare and MaineCare for services that had not been provided or were not reasonably medically necessary, knowingly submitted or caused to be submitted false or fraudulent claims for payment or approval in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), and thereafter received payments on such false or fraudulent claims.

54.     Because of Winn's acts, the United States sustained damages in an amount to be determined at trial, and therefore is entitled to treble damages under the False Claims Act, plus civil penalties for each violation.

### Count II: Maine Law Civil Liability of Persons Making False Claims

(Maine; 22 M.R.S. § 15)

55.     Paragraphs 1 through 54 are realleged as though fully set forth herein.

56.     Defendant, by submitting claims to MaineCare for services that had not been provided or were not reasonably medically necessary, made or caused to be made or presented or caused to be presented for payment or approval claims upon or against Maine DHHS or upon funds administered by Maine DHHS, knowing such claims to be materially false, fictitious or fraudulent, or knowingly made false written statements or knowingly submitted false documents material to false, fictitious or fraudulent claims or knowingly entered into an agreement, combination or conspiracy to defraud Maine DHHS by obtaining the payment or approval of any materially false, fictitious or fraudulent claim or knowingly made or caused to be made false written statements or records material to an obligation to pay or transmit money or property to Maine DHHS or knowingly concealed or knowingly and improperly materially avoided or materially decreased an obligation to pay or transmit money or property to Maine DHHS, in violation of 22 M.R.S. § 15.

57.     Because of Defendant's acts, Maine sustained damages in an amount to be determined at trial, and therefore is entitled to threefold damages under 22 M.R.S. § 15, plus civil penalties of not less than $2,000 for each violation.

### Count III: Unjust Enrichment

(Common Law; 31 U.S.C. § 3732(b))

58.     Paragraphs 1 through 57 are realleged as though fully set forth herein.

59.     Defendant was unjustly enriched through his conduct as detailed herein.

60.     The circumstances of the matter are such that, in equity, Defendant is liable to account for and pay such amounts, which are to be determined at trial.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs the United States and Maine request that judgment be entered in their favor and against Defendants as follows:

A.     On Count I (Violations of 31 U.S.C. § 3729(a)(1)(A) and (B)), for treble the United States' damages, in an amount to be determined at trial, plus civil penalties for each false claim presented, together with all such relief as may be just and proper;

B.     On Count II (Violations of 22 M.R.S. § 15), for threefold Maine's damages, in an amount to be determined at trial, plus civil penalties for each false claim presented, together with all such relief as may be just and proper;

C.     On Counts I and II for an award of fees and costs pursuant to 31 U.S.C. § 3729 and 22 M.R.S.A. § 15;

D.     On Count III (Unjust Enrichment), for an accounting and for the amounts by which Defendant was unjustly enriched, in an amount to be determined at trial, together with costs and interest; and

E.     All other relief this Court deems just and proper.

## VIII.   DEMAND FOR JURY TRIAL

The United States and Maine demand a jury trial in this case pursuant to Federal Rule of Civil Procedure 38(b) of all claims and issues so triable.

Dated:  April 27, 2023            Respectfully Submitted,

                                  DARCIE N. MCELWEE
                                  United States Attorney


                         By:      */s/ John G. Osborn*
                                  John G. Osborn
                                  Assistant United States Attorney
                                  U.S. Attorney's Office
                                  100 Middle Street
                                  Portland, ME 04101
                                  (207) 780-3257
                                  john.osborn2@usdoj.gov
                                  *On behalf of the United States*


DATED:  April 27, 2023            AARON M. FREY
                                  Attorney General for the State of Maine


                                  BY: */s/ John P. Burke*
                                  John P. Burke
                                  Assistant Attorney General
                                  Healthcare Crimes Unit
                                  6 State House Station
                                  Augusta, ME 04333
                                  (207) 626-8804
                                  William.Savage@maine.gov
                                  *On behalf of the State of Maine*